IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Christopher Duggan, et al.,          :

    Plaintiffs,                  :

    v.                           :          Case No. 2:08-cv-814

The Village of New Albany,           :          JUDGE SARGUS
et al.,
                                 :
    Defendants.

OPINION AND ORDER

    On the surface, this is a relatively straightforward case. Plaintiffs T. Patrick Duggan and V. Ann Hailey claim that their son, plaintiff Christopher Duggan, was assaulted by a New Albany police officer and that the Village of New Albany frustrated their attempts to have an adequate investigation of the incident take place.  In fact, they assert that the Village made a concerted effort to divert their inquiries and was not always truthful with them concerning the progress of the investigation.

    The case is currently before the court to resolve a discovery dispute.  On February 9, 2009, the defendants, through counsel, issued two subpoenas.  One was directed to the custodian of records at New Albany High School.  The other was directed to the records custodian at Columbus Academy.  Both sought production of the following records: "A complete copy of any and all files in your possession regarding Christopher Duggan for the time period he was enrolled at your school, including but not limited to, disciplinary files, performance files, and/or any documents relating to his transfer in or out of your school."

    Two days after these subpoenas were issued, plaintiff filed a motion for a protective order concerning the subpoenas.  The Court promptly held a status conference on the motion, but by that time, one of the two recipients of the subpoena, New Albany High School, had produced records.  The parties quickly completed

briefing on the issues raised by the motion for protective order, and the matter is now ready for the Court to decide. For the following reasons, the Court will issue a protective order which limits both the scope of the subpoenas issued and the use which defendants may make of any information they receive.

I.

As an initial matter, the Court notes that plaintiffs argued, in support of their motion, that the records maintained by New Albany High School are confidential under Ohio law. In support of that argument, they cited O.R.C.. §3319.321(B). In response, the defendants noted that the statute has been construed to create a prohibition against the disclosure of student records only while the student is attending a public school, and not following graduation. Christopher has graduated from New Albany High School. Plaintiffs do not mention this statute in their reply brief, and the Court concludes that they have abandoned any reliance upon it. Consequently, the Court will address the only other argument plaintiffs advance in their motion, which is that the subpoenaed records are not relevant to any issue in the case.

II.

In support of their issuance of these two subpoenas, the defendants claim that they have reason to believe that Christopher "was the subject of serious disciplinary proceedings" while he attended both Columbus Academy and New Albany High School. The defendants further argue that "[b]y filing this lawsuit, Plaintiffs have placed Christopher Duggan's character and credibility at the forefront." They note that only Christopher and Officer Mowery were present when the alleged assault occurred, and that Christopher's "character, veracity and credibility" will therefore be at issue. They do not directly address the plaintiffs' argument that many of his school records, including grades and test results, or his elementary school records, which are, in part, the subject of the subpoena served

upon Columbus Academy, have little, if any, relevance even to issues of character and credibility.

The general principles involving the proper scope of discovery are well known. The Federal Rules of Civil Procedure authorize extremely broad discovery. <u>United States v. Leggett & Platt, Inc.</u>, 542 F.2d 655 (6th Cir. 1976), <u>cert. denied</u> 430 U.S. 945 (1977). Therefore, Fed.R.Civ.P. 26 is to be liberally construed in favor of allowing discovery. <u>Dunn v. Midwestern Indemnity</u>, 88 F.R.D. 191 (S.D.Ohio 1980). Any matter that is relevant, in the sense that it reasonably may lead to the discovery of admissible evidence, and is not privileged, can be discovered. The concept of relevance during discovery is necessarily broader than at trial, <u>Mellon v. Cooper-Jarrett, Inc.</u>, 424 F.2d 499 (6th Cir. 1970), and "[a] court is not permitted to preclude the discovery of arguably relevant information solely because if the information were introduced at trial, it would be 'speculative' at best." <u>Coleman v. American Red Cross</u>, 23 F.3d 1091, 1097 (6th Cir. 1994).

Information subject to disclosure during discovery need not relate directly to the merits of the claims or defenses of the parties. Rather, it may also relate to any of the myriad of fact-oriented issues that arise in connection with the litigation. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340 (1978). On the other hand, the Court has the duty to deny discovery directed to matters not legitimately within the scope of Rule 26, and to use its broad discretionary power to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request. <u>See Herbert v. Lando</u>, 441 U.S. 153 (1979). Additionally, the Court has discretion to limit or even preclude discovery which meets the general standard of relevance

found in Rule 26(b)(1) if the discovery is unreasonably duplicative, or the burden of providing discovery outweighs the benefits, taking into account factors such as the importance of the requested discovery to the central issues in the case, the amount in controversy, and the parties' resources. See Fed.R.Civ.P. 26(b)(2). Finally, the Court notes that the scope of permissible discovery which can be conducted without leave of court has been narrowed somewhat by the December 1, 2000 amendments to the Federal Rules. Rule 26(b) now permits discovery to be had without leave of court if that discovery "is relevant to the claim or defense of any party ...." Upon a showing of good cause, however, the Court may permit broader discovery of matters "relevant to the subject matter involved in the action." Id.

The Court first addresses the notion that the plaintiffs put Christopher's character at issue by filing this lawsuit. There would appear to be nothing about an excessive use of force case which requires an inquiry into the character of the alleged victim, unless there is some allegation that the victim, through aggressive conduct, actually provoked the assault. That does not appear to be an element of this case. Many cases have held that, even in the prison context, the victim's prior disciplinary record cannot be used to show that he or she had some character trait such as a propensity for violence, because the alleged victim's character is not an element of an excessive force case. See, e.g., Hynes v. Coughlin, 79 F.3d 285 (2d Cir. 1996; see also Lewis v. Valez, 149 F.R.D. 474 (E.D.N.Y. 1993). In such a case, the focus is on the actions of the officer who allegedly used excessive force and not on the character of the alleged victim. United States v. Serrato, 425 F.3d 886 (10th Cir. 2005).

The irrelevance of character evidence in this type of case is grounded in the Federal Rules of Evidence. In general, the admissibility of character evidence is governed by Fed.R.Evid.

404(b).  Rule 404(b) is a rule of exclusion.  It provides that
evidence of other "bad acts" is not admissible to prove the
character of a person in order to show that he or she acted in
conformity with that character trait.  There are specific types
of things which character evidence can be used to show, but none
of them appear applicable here.  Although, when the character of
a party or a witness is at issue, Rule 405(b) allows specific
instances of conduct to be offered as proof of character traits,
that rule is applicable only when character evidence is
admissible under rule 404(b).  See Hynes, supra.  Given the
absence of any evidence that Christopher's character has been
placed at issue in this case either by the filing of the lawsuit
or by any affirmative defense raised by the defendants, the Court
cannot accept the defendant's argument that this information is
discoverable because it relates to Christopher's character.

Defendants' other argument is that Christopher's veracity
has been placed in issue.  Of course, the credibility of
witnesses is an issue in every case.  That does not mean,
however, either that the Rules of Evidence contain no limits on
the type of evidence to be introduced on this issue, or that the
parties are entitled to any and all discovery which might have
some bearing, however remote, on the credibility of the witnesses
in the case.  As with character evidence, as a general matter,
the prior disciplinary history of a party or witness, whether
that history comes from the workplace, the prison context, or, as
here, the academic context, is simply irrelevant to the issue of
a witness' or a party's credibility.  See Eng v. Scully, 146
F.R.D. 74 (E.D.N.Y. 1993).  Again, there is a specific
evidentiary rule, Rule 608(b), which provides that specific
instances of the past behavior of a witness which purportedly
either support or detract from the witness' character for
truthfulness may not be proved by extrinsic evidence.  One
exception, of course, is evidence of conviction of certain
crimes, but the defendants do not argue that the evidence they

have subpoenaed would show that Christopher was convicted of a crime.

Although a party may not prove lack of veracity by independent proof of specific instances of dishonesty, Rule 608(b) does permit, if the court deems it appropriate, questioning of a witness about the witness's character for truthfulness or untruthfulness, and that questioning may include inquiring about some types of past behavior. For example, a party might be entitled to discover evidence of prior workplace discipline if, as part of the disciplinary incident, a witness acted in a dishonest manner or made an untruthful statement. <u>See Watera v. United States Capitol Police Board</u>, 216 F.R.D. 153 (D.D.C. 2003); <u>see also United States v. Fortes</u>, 619 F.2d 108 (1st Cir. 1980).

Recognizing that the relevance standard during the discovery phase of a case is broader than the relevance standard at trial, the defendants might be entitled to conduct some discovery concerning Christopher's disciplinary history to the extent that, during some disciplinary matter, he may have conducted himself in a dishonest manner or may have given untruthful statements. The defendants could not be expected to know, without examining the records of the disciplinary matters, whether they contain such evidence. Although it is not a foregone conclusion that even if Christopher's disciplinary records demonstrate some dishonesty or untruthfulness, the Court would permit an inquiry about them - because any such evidence is also subject to the weighing procedure set forth in Rule 403 - some limited discovery concerning such matters would appear to be permissible. Again, however, it is only such disciplinary records which might possibly be relevant. The Court also concludes that records of school discipline which predate the incident in question by more than three years are irrelevant and inadmissible. All of the other information responsive to the subpoenas is also irrelevant, and because each subpoena calls for the production of all student

records for the entirety of Christopher's attendance at either school, the subpoenas are dramatically overbroad.

Given this analysis, the Court will, first, limit the subpoenas to any records of school disciplinary proceedings in which Christopher was involved in the three years before the incident which gave rise to this lawsuit. Second, because it is entirely possible that such records will be totally irrelevant because they contain nothing concerning either dishonest behavior or untruthful statements, and because such records may have the potential to cause Christopher to be harassed or embarrassed, the Court will limit the use of such information to purposes related to this litigation, and limit its disclosure to parties in the litigation. Once any such records are produced, if it appears that they are entirely irrelevant, plaintiffs may move for an order sealing the records.

### III.

Based on the foregoing, the plaintiffs' motion for a protective order is granted as follows. The only documents which need be produced are records of school disciplinary proceedings which occurred within three years of the incident which gave rise to this lawsuit. Those records shall be produced, but their use is limited to purposes related to this lawsuit, and their disclosure is limited to the parties and their counsel until further agreement of the parties or order of the Court.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge