IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Christopher Duggan, et al., :

    Plaintiffs, :

    v. : Case No. 2:08-cv-814

The Village of New Albany, : JUDGE SARGUS
et al.,
     :
    Defendants.

OPINION AND ORDER

This 42 U.S.C. §1983 case is before the Court to resolve the question of whether the plaintiffs have to prove (in some fashion) that Christopher Duggan's constitutional rights were violated by former New Albany police officer Steven Mowery before they can obtain discovery on their claims against the Village of New Albany. For the following reasons, the Court holds that such a variance from the usual course of discovery is not warranted in this case. It leaves for a later day the issue of whether the trial should be bifurcated along these same lines.

I.

As reflected by the pleadings, plaintiff Christopher Duggan claims that he was "brake-checked" by defendant Steven Mowery, who was then a New Albany police officer, after being taken into custody after being questioned about a possible curfew violation. The complaint also asserts that New Albany and its police chief were responsible for enabling Officer Mowery's actions, and engaged in a sham investigation that resulted in the potential loss or destruction of evidence. The complaint asserts claims under both §1983 and state law. The defendants deny all these allegations.

After discovery began, the New Albany defendants moved to

bifurcate the plaintiff's claims against them from the claims against Officer Mowery.  Officer Mowery supports this motion.  The argument supporting the motion is that until it is determined that Officer Mowery violated Christopher's rights, the issue of New Albany's liability is not really ripe for decision.  Conversely, if it is determined that Officer Mowery did not violate Christopher's rights, New Albany will never have to defend against a municipal liability claim under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).  Thus, according to the defendants, the Court should defer any discovery on the <u>Monell</u> (or municipal liability) claim until the Court resolves, in some fashion, "the fundamental question of whether the alleged assault actually happened."  Defendants' reply memorandum, doc. #31, at 5.

II.

Although the defendants suggest that courts in this district routinely order the type of bifurcation for which they argue, that is not necessarily the case.  It is true that in <u>Brunson v. City of Dayton</u>, 163 F.Supp. 2d 919 (S.D. Ohio 2001), the Court ordered the bifurcation of the trial between the individual liability and municipal liability claims.  In doing so, Judge Rice reasoned that it would be prejudicial to the individual defendants to have evidence of the City of Dayton's past misconduct presented to the same jury who would determine whether, in the specific case before the court, the officers' conduct violated the plaintiff's constitutional rights.  <u>See also</u> <u>Wells v. City of Dayton</u>, 495 F.Supp. 2d 793 (S.D. Ohio 2006).  Both of these decisions also discounted the possibility that two trials would occur, noting that the City would probably indemnify any officer held liable in the first trial and that the City could not be held liable were the first trial to result in a defense verdict on the grounds that no constitutional violation

occurred. The Court acknowledged that, were the first trial to result in a finding that the plaintiff's rights were violated but the individual defendants were protected by qualified immunity, a second trial might be needed, but it discounted that possibility as remote. The Court of Appeals has approved a trial bifurcation based on this rationale. Wilson v. Morgan, 477 F.3d 326 (6th Cir. 2007).

Such bifurcation is discretionary, however, and not every trial judge within this Judicial District views the issue the same way. See, e.g., Estate of Owensby v. City of Cincinnati, 385 F.Supp. 626, 666 (S.D. Ohio 2004) (Spiegel, J.) (denying motion to bifurcate trial between individual and municipal liability on grounds that "much, if not all, of the efficiency the City purports will accrue if the trial is bifurcated will not be realized in fact"). None of these decisions, however, directly addresses the question of whether discovery should also be bifurcated, and discovery from the municipal defendant stayed, until after there has been a trial or other evidentiary showing that the plaintiff's constitutional rights were violated by the individual defendant.

There is authority from other districts for bifurcating discovery between individual and municipal liability claims even if the trial may not ultimately be bifurcated. For example, in Lopez v. City of Chicago, 2002 WL 335346 (N.D. Ill. March 1, 2002), the court deferred discovery on the municipal liability claims pending completion of fact discovery on the claims against the individual officers, although it was not exactly clear how the court would then decide, after such discovery had been completed, whether discovery against the municipality should proceed. Other courts have refused to bifurcate discovery on such claims, noting that even if the trial judge were to order a bifurcation of the claims at trial, if a second trial on

municipal liability were needed, the trial judge ought to be in a position to have that case tried to the same jury immediately after the verdict was reached in the individual liability case. See, e.g. McCoy v. City of New York, 2008 WL 3884388 (E.D.N.Y. August 13, 2008). Still other courts have granted bifurcations of either discovery or trial only upon a stipulation that the municipality will pay any judgment rendered against the individual defendant, and even in that situation, the courts look to issues such as whether the discovery and evidence on the individual and municipal claims will substantially overlap, and whether there is a significant chance that the individual defendant might prevail on a qualified immunity defense, before granting bifurcation. See, e.g., Elrod v. City of Chicago, 2007 WL 3241352 (N.D. Ill. November 1, 2007). Finally, of course, there are decisions which simply deny both bifurcation and stay of discovery on municipal liability claims because the efficiencies to be gained by such bifurcation are not substantial, the court has the power to protect the municipality against overly burdensome discovery on the municipal liability claims (assuming it can make a proper and specific showing of undue burden), and the circumstances of the particular case do not support the defendants' assertion that "Monell discovery would overwhelm an otherwise small case ..." See Cadiz v. Kruger, 2007 WL 4293976, *5 (N.D. Ill. November 29, 2007).

### III.

The Court agrees that any decision either to bifurcate discovery, or to stay discovery with respect to certain issues until other events have occurred, is committed to the Court's sound discretion. That discretion must take into account the benefits or detriments to each party's interest that a stay would occasion, and it must also take into account the Court's interest in reaching a just, speedy and efficient resolution of the issues

raised by the pleadings. The decisions cited above recite most of the salient considerations. The Court must simply apply those considerations to the particular circumstances of the case before it in order to reach the correct result.

First, a Magistrate Judge will not ordinarily order the bifurcation of a trial at which a District Judge will preside. Further, as the case law indicates, bifurcation of the trial is by no means a given. Much will depend on the state of the evidence at the time of trial, and how much duplication would be involved were two trials to be held. The factors that go into a determination of whether the trial should be bifurcated are not completely developed here, but the Court does note that New Albany has not offered to stipulate that if Officer Mowery committed the acts in question, it would indemnify him, and that there is more than a slight possibility that a jury could find that Officer Mowery acted unconstitutionally but not unreasonably, especially given the applicability of the Supreme Court's <u>Saucier v. Katz</u> (533 U.S. 194 (2001)) decision to claims of the use of excessive force by law enforcement officers. Further, as more fully explained below, this appears to be a case where many of the New Albany witnesses may be called upon to testify not just to policies and customs about the practice of "brake-checking" suspects, but to the circumstances of an investigation which go to the issue of whether Officer Mowery actually performed that maneuver on the night in question – something which New Albany adamantly denies – and whether New Albany attempted to cover up his guilt in some way. In the final analysis, however, the District Judge should have much more information about the potential overlap of evidence and witnesses before deciding that a bifurcated trial would be the most efficient approach to trying this case.

That said, the primary issue to be resolved is whether

bifurcating discovery is appropriate. Even if the trial were ultimately bifurcated, the Court finds the McCoy decision cited above persuasive on the question of whether the Court should be in a position to conduct the second phase of the trial right after the first, and with the same jury. It can hardly be argued that there would be no overlap of evidence, and if there were a substantial delay between phases of the trial, there would be no guarantee that the same jurors would be available for the second phase. Under those circumstances, the issue of what Officer Mowery did would have to be tried again in its entirety so that the question of New Albany's liability for that act could be placed in the proper context. Such a delay would also make it unlikely that the case could be resolved within the parameters of the current schedule, which includes a trial date in March, 2010. Further, Officer Mowery has pleaded the affirmative defense of qualified immunity, so that unless New Albany stipulated both that it would pay any judgment rendered against him, or take financial responsibility for any unconstitutional acts he committed even were the jury to find him immune from a damage award, a second trial is more than a remote possibility.

Next, the Court believes, based on what it has learned of this case to date, that much of the discovery requested from New Albany goes not just to the issue of municipal liability under Monell, but also to issues about the Village's investigation, the alleged cover-up or destruction of evidence, and the police chief's involvement in those events, all of which would still be relevant even if discovery on the Monell claim were deferred. Finally, because the lines between these claims are somewhat blurred in this case, any bifurcation of discovery would inevitably lead to more litigation about where the line between permissible discovery and deferred discovery would be drawn, and would create inefficiencies such as multiple depositions of the

same witnesses.  All of these factors weigh heavily against a stay of discovery from New Albany.

The Court notes that much of New Albany's motion is premised upon the proposition that the discovery directed to it is not relevant to any legitimate claim asserted in the complaint, and that it is simply designed to harass and embarrass the Village and its officials.  As the cases cited above point out, however, that is no reason to stay discovery altogether.  If the Village has a valid reason to resist such discovery, it should object on grounds recognized by the Federal Rules of Civil Procedure, and if the parties are unable to work around their differences, they may bring specific issues to the Court for resolution.  Overall, however, none of New Albany's arguments persuade the Court that discovery in this case should proceed on a different course than in most civil cases.

IV.

For the foregoing reasons, the motion of defendants Village of New Albany and Chief Chaney to bifurcate and to stay discovery (#28) is denied.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge